Case 3:19-cv-005●●C Do●●●●●● ●●03/07/19 ●●●ge 1 of 16 PageID 1

ORIGINAL

SEALED

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2019 MAR -7 PM 4: 06

DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION : | |
| Plaintiff, : | |
| v. : | Civil Action No.: |
| WILLIAM NEIL "DOC" GALLAGHER, : | FILED UNDER SEAL |
| GALLAGHER FINANCIAL GROUP, INC. and : | |
| W. NEIL GALLAGHER, Ph.D. AGENCY, INC. : | |
| Defendants. : | |

**3:19 - CV0575 - G**

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC") files this Complaint against

Defendants William Neil "Doc" Gallagher, Gallagher Financial Group, Inc. ("GFG"), and W.

Neil Gallagher, Ph.D. Agency, Inc. ("Gallagher Agency") (collectively "Defendants"), and

alleges as follows:

### I.
### SUMMARY

1.      Since at least December 2014, William Neil "Doc" Gallagher ("Gallagher"), a

long-time radio personality in the Dallas/Fort Worth metroplex who markets himself as "The

Money Doctor," has perpetrated an affinity-fraud investment scheme on investors through two

North Texas-based companies he owns and controls, GFG and the Gallagher Agency. Despite

having no valid securities-industry credentials, Gallagher has offered and sold securities, raising

at least $19,606,977.97 from at least approximately 60 investors—ranging in age from 62 to

91—while claiming to be a fully licensed advisor offering retirement advice and investment



EXHIBIT

A

services.  He has raised these funds by selling an investment product called a Diversified Growth and Income Strategy Account ("DGI Account").

2.      To attract investors, Gallagher pays for airtime and hosts retirement-planning programs on three Dallas-area radio stations, including one on a Christian-talk station.  Gallagher makes frequent religious references on his shows, seeking to appeal to a Christian audience.  He repeatedly solicits listeners to call GFG to schedule personal meetings with him to discuss retirement planning and obtain advice about risk-free income.  In these face-to-face meetings, Gallagher pitches investments in DGI Accounts, promising investors that he will generate guaranteed, risk-free returns ranging from 5% to 8% per year and "retirement income you'll never outlive."  He claims to generate these returns by using investor principal to acquire a mix of five asset classes: (1) U.S. Treasury securities; (2) publicly-traded stock; (3) fixed-index annuities; (4) life settlements; and (5) mutual-fund shares.

3.      In reality, Gallagher has used only a small fraction of the deposited funds to purchase assets in any of the five asset classes—a single annuity purchase of $75,000.  And he has purchased no other assets to generate the promised returns.  Instead, he has used at least $5.8 million to make monthly Ponzi payments to investors, falsely claiming that the payments are returns being generated by assets in their DGI Accounts.  He has also directly misappropriated investor funds, including nearly $3.2 million to pay personal expenses, payroll, and radio expenses to attract new investors.  Despite raising at least $19,606,977.97—and possibly as much as $29,197,669.70—from DGI Account investors since December 2014, the Gallagher-controlled bank accounts held a combined balance of only $821,951, as of January 31, 2019.

4.      Gallagher's fraudulent investment scheme is on-going.  He continues to advertise his retirement-planning services on GFG's website, which contains links to recordings of his past

radio shows, and all three Dallas-based radio stations aired his programs as recently as last weekend. In January 2019 alone, Gallagher raised at least $500,000 from new and existing DGI Account investors.

5.    By reason of these activities and the conduct described further below, the Defendants have violated and, unless enjoined, will continue to commit violations of the antifraud provisions of the federal securities laws, specifically Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] thereunder, and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 (Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

6.    In the interest of protecting the public from any further fraudulent activity and harm, the SEC brings this action against the Defendants, seeking permanent injunctive relief, disgorgement of ill-gotten gains plus prejudgment interest thereon, and a civil monetary penalty, as allowed by law. Because of the ongoing nature of the fraudulent offering and risk of asset dissipation, the SEC also seeks emergency relief, including a temporary restraining order, an asset freeze, and the appointment of a receiver.

## II.
## JURISDICTION AND VENUE

7.    This case centers around the DGI Accounts that Gallagher and GFG marketed to investors. Gallagher and GFG represented that investor principal would be used to purchase U.S. Treasury securities, publicly traded stock, mutual-fund shares, life settlements, and fixed-index annuities. In the process, Gallagher and GFG offered and sold securities to investors and functioned as investment advisers. And Gallagher, GFG, and Gallagher Agency participated in a scheme to defraud investors. As such, Defendants have offered and sold securities under Section

2(a)(1) of the Securities Act [15 U.S.C. §77b], Section 3(a)(10) of the Exchange Act [15 U.S.C. §78c], and Section 202(18) of the Advisers Act [15 U.S.C. § 80B-2(18)].  The Court has jurisdiction over this action pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78(aa)], and Sections 209(c), 209(d), and 214 of the Advisers Act. [15 U.S.C. §§ 80b-9(c), 80b-9(d), and 80b-14].

8.      Venue is proper because a substantial part of the events, acts, or omissions giving rise to the claims occurred within the Dallas Division of the Northern District of Texas. Gallagher maintains GFG offices in Dallas and Hurst.  Further, Gallagher's radio programs are broadcast on three radio stations whose studios are located in Irving (Dallas County) Texas. Additionally, many of Defendants' investors reside in Dallas County.

## III.
## DEFENDANTS

9.      **William Neil Gallagher,** of North Richland Hills, Texas, is the president of GFG and Gallagher Agency.  He is licensed to sell insurance products in Texas.  From 1985 to 2001, he was associated at various times with seven registered broker-dealers, and passed the following securities-industry examinations:  Series 7 (securities representative), 24 (securities principal), and 63 (securities agent, state law).  But he has not been associated with a registered broker-dealer since May 2001.  Gallagher was also associated with a registered investment adviser from October 23, 2003, through January 9, 2009.  In December 1999, the Texas State Securities Board entered an order reprimanding Gallagher for engaging in fraudulent business practices, including falsifying check-receipt books and falsely advertising that he was a registered investment adviser, when in fact he was not.

10.     **Gallagher Financial Group, Inc.** ("GFG"), incorporated in 1993, is a Texas corporation with offices in Dallas and Hurst, Texas. It is has never been registered with the Commission in any capacity. According to its website, the company purports to be in the business of retirement planning and investments. Gallagher controls the company, serving as its president, as its registered agent, and as one of its two directors.

11.     **W. Neil Gallagher, Ph.D. Agency, Inc.,** ("Gallagher Agency"), incorporated in 1994, is a Texas corporation located in Hurst, Texas. It is has never been registered with the Commission in any capacity. Gallagher controls the company, serving as its president, as its registered agent, and as one of its two directors.

## IV.
## STATEMENT OF FACTS

12.     Since at least December 2014, Gallagher has operated a securities-fraud scheme through his companies, GFG and Gallagher Agency, targeting the retirement funds of elderly investors using a religious appeal. He hosts three weekly retirement-planning radio shows in which he makes religious references to attract a Christian audience. One program is broadcast on a radio station with Christian-talk format.

13.     GFG's website also features religious themes. It contains a mission statement that reads: "Our mission is to be a vehicle of God's peace and comfort to as many people as possible, helping first with their financial peace of mind, then also with their spiritual, emotional and family well being." The website also promotes a book that Gallagher wrote entitled *Jesus Christ, Money Master: Four Eternal Truths That Deliver Personal Power and Profit.* The website also states, "Let us help you create a retirement income you'll never outlive!"

14.     On his radio shows, Gallagher repeatedly asks listeners to call GFG to set up a free, in-person meeting with him. In these meetings, he solicits investors to open and fund an

investment account at GFG, the DGI Account.  By the end of January 2019, Gallagher had raised money from at least approximately 60 investors—ranging in age from 62 to 91—who invested at least $19,606,977.97 in DGI Accounts.

15.    During in-person investor meetings, Gallagher provides investors binders of documents containing misleading statements regarding his status as an investment adviser and broker.  For example, these statements include representations that he is a "fully-licensed" "Wealth Manager" and "Independent Advisor."  One document, a "Fact Sheet" dated 2015, states, "[w]e focus on providing clients with the highest quality of asset management services." Another document refers to GFG's website, which contains a video "Living Resume" that says that, after earning a Ph.D. from Brown University, Gallagher "received his financial license and began working as a broker."  These statements are misleading because they omit material information.  In reality, Gallagher currently holds no securities-industry credentials—he has not been associated with a registered broker since 2001, and has not been associated with a registered investment adviser since 2009.

16.    Despite lacking credentials, GFG and Gallagher are functioning as investment advisers.  The binder documents provide that Gallagher and GFG will control the DGI Account on the investor's behalf.  For example, a binder cover page describes the account using the following title: "Discretionary Monitoring & Selection of G. F. G., Inc. Diversified Growth & Income© by Gallagher Financial Group, Inc.© and W. Neil Gallagher, Ph.D.©."  Another page explains, "[i]n many ways when you hire me it's like hiring a Master Captain for your ship.  It's your ship . . . so you can come up to the bridge anytime, but don't touch anything!  It's *my* job to get you safely through the storms and into port."  (Italics in original).

17.     Moreover, the binder documents also identify the underlying investments that Gallagher and GFG propose to acquire for investors within their DGI Account. These documents list the following five asset classes: (1) Treasuries; (2) Investors Business Daily Formula; (3) Fixed Index; (4) Life Settlements; and (5) Value/Dividends. Descriptive documents grouped under these five headings explain that Gallagher will invest the DGI Account principal into: (1) U.S. Treasury securities; (2) publicly traded stock; (3) fixed-index annuities; (4) life settlements; and (5) mutual-fund shares. For example, after describing three stock-picking methods, a summary page states, "the overall Diversified Growth and Income Strategy incorporates the best of all three and may include positions in certain government issues, as well as Life Settlements." Thus, Gallagher and GFG promise to use investor funds to purchase securities within five asset classes. He has told investors that their principal would be invested in equal amounts among the five asset classes.

18.     The binder documents also provide that Gallagher and GFG will be compensated for managing the DGI Accounts. An investor testimonial within the binder states, "And you were so up front about your fees, your compensation, if I should move my investments to the Gallagher Group." In addition, during face-to-face investor meetings, Gallagher provides details orally about this compensation and about the growth and safety of a DGI Account. He has promised investors that they would pay no out-of-pocket fee for his services. He has told investors that DGI Accounts will generate guaranteed minimum returns ranging from 5% to 8% annually without risk to investors' principal, and has told some that he would receive 1% of the accounts' gains, which he claimed would leave enough left over to pay investors their promised returns. In other in-person meetings, Gallagher has told investors that he would be paid commissions by the firms from whom he purchases assets on the investors' behalf.

19.    The binder documents Gallagher provides to investors emphasize that a DGI Account's investment objectives are to protect principal and to provide guaranteed, risk-free income. For example, the life-settlement section presents a hypothetical in which 10 investors pay $50,000 each to purchase a $1 million life-insurance policy on an 87-year-old man. After explaining the prospect of a 100% return if the man dies within 12 months, the section states:

> In the unlikely event the insured lives 10 years, the investors still receive a 10 percent return—all with no market risk, no connection to the stock market, no connection to the sub-prime mortgage industry, no connection with risky bank gambling in derivatives. In essence, the investors have a guaranteed return.

20.    The documents also contain other statements concerning investment safety, including the following:

- "GFG, Inc. provides guarantees for lifetime growth and lifetime income."

- "GFG, Inc. works not to make the company rich, but to make the client rich."

- "Gallagher Financial Group practices P.P.P. 'Protect Profits and Principal' for clients. In 2008, when the markets got smashed, our clients lost nothing."

- "Safety, in all market conditions, is paramount. And profits are protected."

21.    In reality, Gallagher and GFG's statements relating to the DGI Account's investment objectives, protecting investor principal and profits, and providing guaranteed, risk-free income were untrue or were otherwise misleading because they omitted material facts. In reality, Gallagher has misappropriated and misapplied virtually all of the $19,606,977.97 received from DGI Account investors.

22.    Gallagher commingled DGI Account investor funds with funds from other sources in GFG and Gallagher Agency bank accounts. From January 1, 2015, through January 31, 2019, Gallagher received approximately $30,379,040.96 from all sources. At least $29,197,669.70 of this amount was from individuals. At least $19,606,977.97 of that —

representing at least 64.5% of the total deposits in the period—was from DGI Account investors. Of the more than $30 million total deposits, Gallagher he deposited at least $26,730,602.65 into a GFG bank account and $3,648,438.31 into a Gallagher Agency bank account—accounts he controls as signatory and as president of each entity.

23.     The overwhelming majority of the approximately $30.3 million in total deposits in this period came from individuals who rolled over or otherwise transferred retirement funds from IRAs and 401(k) accounts into Gallagher's control ($29,197,669.70). Gallagher instructed investors to liquidate securities in such accounts to fund DGI Accounts. Since January 1, 2015, however, Gallagher, a licensed insurance agent, has paid insurance premiums totaling just $11,583 and appears to have purchased a single annuity for $75,000. He has purchased no other assets in any of the five listed asset classes, nor has he purchased any other investment assets. As a result, the GFG and Gallagher Agency bank accounts have not received revenue from which to pay DGI Account investors their promised returns.

24.     Nevertheless, from the GFG and Gallagher Agency bank accounts, Gallagher has made monthly (and other) payments to DGI Account investors totaling at least $5,863,373.26. Gallagher has also provided these investors phony account statements purporting to show that these payments reflect profits earned on the assets in their DGI Accounts, and that their principal remains safe, secure, and undiminished. In reality, Gallagher has used un-invested and commingled investor funds to pay returns to these investors, lulling them into believing their investments are safe. Because the funds invested by DGI Account investors account for the vast majority of the total commingled funds, these so-called profit payments necessarily included funds from later investors to pay earlier investors—a classic Ponzi scheme.

25.     In addition to misappropriating funds to pay investors, Gallagher has diverted and

misappropriated investor funds to pay personal expenses and to pay radio and website expenses to continue to attract investor victims. For example, he transferred at least $3,873,408.88 from the GFG and Gallagher Agency accounts—accounts containing commingled funds—into yet another account he controls in the name of Gallagher Agency. From that account, he paid expenses, including $945,000 for radio, website, and related media expenses; $2.3 million for GFG payroll, bonuses, and consulting; and $633,000 for legal expenses. These payments contradict Gallagher's promise to use investor funds to purchase assets within the five asset groups and to keep principal safe and secure. As of January 31, 2019, Gallagher had exhausted all but a fraction of the $30.3 million deposited into the GFG and Gallagher Agency accounts.

## V.
## CLAIMS FOR RELIEF

### FIRST CLAIM
### Violations of Sections 17(a)(1) and (3) of the Securities Act
### Against All Defendants

26.     The Commission repeats and incorporates paragraphs 1 through 25 of this Complaint by reference.

27.     By engaging in the conduct described herein, Defendants, directly or indirectly, singly or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication of interstate commerce and by use of the mails, have: (a) knowingly or with severe recklessness employed devices, schemes, or artifices to defraud; and (b) at least negligently engaged in transactions, practices, and/or courses of business which operate or would operate as a fraud or deceit upon purchasers, prospective purchasers, and other persons.

Case 3:19-cv-0057⬤ ⬤   Document 1   Filed 03/07/19   ⬤ ⬤ e 11 of 16   PageID 11

28.     By reason of the foregoing, Defendants have violated and, unless enjoined, will continue to violate Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and 77q(a)(3)].

## SECOND CLAIM
### Violations of Section 17(a)(2) of the Securities Act
### <u>Against Gallagher and GFG</u>

29.     The Commission repeats and incorporates paragraphs 1 through 25 of this Complaint by reference.

30.     By engaging in the conduct described herein, Defendants Gallagher and GFG, directly or indirectly, singly or in concert with others, in the offer and sale of securities, by use of the means or instrumentalities of interstate commerce or of the mails, and at least negligently, obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

31.     As part of these actions, Defendants Gallagher and GFG, directly and indirectly, prepared, disseminated, or used written offering documents, promotional materials, and made oral representations, which contained untrue statements of material fact and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including but not limited to, those statements and omissions set forth in paragraphs 1 through 25above.

32.     By reason of the foregoing, Defendants Gallagher and GFG have violated and, unless enjoined, will continue to violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

Case 3:19-cv-0057⬤⬤   Document 1   Filed 03/07/19   ⬤⬤e 12 of 16   PageID 12

## THIRD CLAIM
### Violations of Section 10(b) of the Exchange Act and Rules 10b-5(a), 10b-5(b), and 10b-5(c) Against Gallagher and GFG; and

### Violations of Section 10(b) of the Exchange Act and Rules 10b-5(a) and 10b-5(c) Against Gallagher Agency

33.    The Commission repeats and incorporates paragraphs 1 through 25 of this Complaint by reference.

34.    By engaging in the conduct described herein, Defendants Gallagher and GFG, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce or of the mails have: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and  (c) engaged in acts, practices, or courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers, and other persons.

35.    By engaging in the conduct described herein, Defendant Gallagher Agency, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce or of the mails have: (a) employed devices, schemes, or artifices to defraud; and (b) engaged in acts, practices, or courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers, and other persons.

36.    By reason of the foregoing, Defendants Gallagher and GFG have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a), 10b-5(b), and 10b-5(c) thereunder [17 C.F.R. §§ 240.10b-5(a), 240.10b-5(b), and 240.10b-5(c)].

37.     By reason of the foregoing, Defendant Gallagher Agency has violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and 10b-5(c) thereunder [17 C.F.R. §§ 240.10b-5(a), and 240.10b-5(c)].

## FIFTH CLAIM
### Violations of Sections 206(1) and 206(2) of the Advisers Act
### Against Gallagher and GFG

38.     The Commission repeats and incorporates paragraphs 1 through 25 of this Complaint by reference.

39.     By engaging in the conduct described herein, Defendants Gallagher and GFG, directly or indirectly, singly or in concert with others, through the use of the mails or any means or instrumentality of interstate commerce, while acting as investment advisers within the meaning of Section 202(11) of the Advisers Act [15 U.S.C. § 80b-2(11)] have: (i) knowingly or with severe recklessness employed, are employing, or are about to employ devices, schemes, or artifices to defraud any client or prospective client; or (ii) at least negligently, engaged, are engaging, or are about to engage in acts, practices, or courses of business which operate as a fraud or deceit upon any client or prospective client.

40.     For these reasons, Defendants Gallagher and GFG have violated, and unless enjoined, will continue to violate Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## V.
## RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

1.     Permanently enjoin Defendants Gallagher and GFG from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. §

78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

    2.      Permanently enjoin Defendant Gallagher Agency from violating Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and 77q(a)(3)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and 10b-5(c) thereunder [17 C.F.R. §§ 240.10b-5(a) and 240.10b-5(c)].

    3.      Permanently enjoin Defendants from directly or indirectly, including, but not limited to, through any entity owned or controlled by Defendants, participating in the issuance, purchase, offer, or sale of any security, provided however, that such injunction shall not prevent Defendant Gallagher from purchasing or selling securities for his own personal account.

    4.      Order Defendants to disgorge ill-gotten gains and benefits obtained illegally, or to which they are otherwise not entitled, as a result of the violations alleged herein, plus prejudgment interest on those amounts;

    5.      Order Defendants to pay civil penalties under Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], Section 20(d) of the Securities Act [15 U.S.C. § 78u(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e) for their violations of the federal securities laws as alleged herein.

    6.      Order such further relief as this Court deems just, appropriate, and equitable.

Case 3:19-cv-0057● ● Document 1   Filed 03/07/19   ●e 15 of 16   PageID 15

Respectfully submitted,



DATED:        March 7, 2019.

JAMIE L. FRANK
Texas Bar No. 07363050
SECURITIES AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry St., Unit #18
Fort Worth, TX 76102-6882
(817) 978-6478
(817) 978-4927 (fax)
frankj@sec.gov

B. DAVID FRASER
Texas Bar No. 24012654
SECURITIES AND EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX  76102-6882
(817) 978-1409
(817) 978-4927 (fax)
fraserb@sec.gov

Case 3:19-cv-00575 ~~Docume~~ **ORIGINAL** ~~Filed 03/07/19~~ P 16 of 16 PageID 16

JS 44 (Rev. 06/17) - TXND (Rev. 06/17)

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**
W. NEIL GALLAGHER, GALLAGHER FINANCIAL GROUP, INC., and W. NEIL GALLAGHER, PH.D. AGENCY, INC.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Tarrant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**RECEIVED**
**MAR - 7 2019**
CLERK, U.S. DISTRICT COURT

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

3:19 - CV0575 - G

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*   Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | **PERSONAL INJURY** | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 365 Personal Injury - Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | [X] 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | **LABOR** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 861 HIA (1395ff) | ☐ 890 Other Statutory Actions |
| | | | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| | | | ☐ 865 RSI (405(g)) | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Management Relations | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 740 Railway Labor Act | |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 751 Family and Medical Leave Act | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Employee Retirement Income Security Act | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **FEDERAL TAX SUITS** | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | **IMMIGRATION** | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 462 Naturalization Application | |
| | | | ☐ 465 Other Immigration Actions | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. §§ 77q(a)(1) and 77q(a)(3); 15 U.S.C. § 77q(a)(2); 15 U.S.C. § 78i(b); et al.
Brief description of cause:
Violations of Federal Securities Laws

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions)*:
JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 03/07/2019 | Janie L. Frank |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____